## UNITED STATES *v.* FIELD & Co. (No. 2760)[1]

1. "BOOKS"—SUSCEPTIBILITY OF AUTHORSHIP.

   Paragraph 1310, Tariff Act of 1922, provides in the first clause, for certain books, "if of bona fide foreign authorship," and, in the second, for "all other, not specially provided for." No article not susceptible of authorship is classifiable under either clause; and the second clause covers the books of the first, if of other than *bona fide* foreign authorship. To hold that the second clause covers all other *books* would render the provisions in the paragraph for certain other *named* books surplusage.

2. SAMPLE-BOOKS OF HALF HANDKERCHIEFS.

   Sample linen handkerchiefs, cut in half and bound book fashion, are not "books," under paragraph 1310, Tariff Act of 1922. Section 308, by providing for free entry of samples, supports this conclusion. They are not handkerchiefs under paragraph 1016, as assessed by the collector, since they are only half handkerchiefs. They would seem to be "manufactures of vegetable fiber other than cotton," under paragraph 1021, but, in the absence of such claim, the collector's classification, though incorrect, must stand.

3. ESTABLISHED PRACTICE.

   An administrative practice without authority of law or against a plain provision of law can not stand.

### United States Court of Customs Appeals, February 24, 1927

APPEAL from Board of United States General Appraisers, Abstract 51248

[Reversed.]

*Charles D. Lawrence*, Assistant Attorney General (*Fred J. Carter* and *Peter A. Abeles*, special attorneys, of counsel), for the United States.

*James W. Bevans* for appellee.

[Oral argument October 5, 1926, by Mr. Carter and Mr. Bevans]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

BARBER, Judge, delivered the opinion of the court:

The imported merchandise in this case is described in the decision of the Board of General Appraisers, now the United States Customs Court, as follows:

An inspection of Exhibit 1 in this case shows it to consist of a portfolio of a front and back cover, between which are inserted and bound together in book form samples of linen handkerchiefs of different qualities, cut in half. The following printing appears on the front cover:

"Dept. 71. Women's De Luxe H. S. Linen Handkerchiefs Hand Thread Drawn. M. F. & Co., Chicago." The sample pieces of handkerchiefs have

---

[1] T. D. 42031.

printed labels pasted thereon descriptive of the merchandise and each marked with a certain quality number.

This description may be enlarged by saying that there are 12 half handkerchiefs bound in the portfolio. One of the printed labels pasted on each, which exemplifies all, is as follows:

Hand Thread Drawn
All Linen
No. 1111/1
M. F. & Co.   Dept. 71
Made in Ireland

There is no other printing or writing whatever upon the exhibit. The front and back portfolio covers are each substantially 12½ inches long and 6½ inches wide and the half-handkerchief "sheets" are about 11 inches long and 5½ inches wide.

The merchandise was classified by the collector under paragraph 1016 of the Tariff Act of 1922. Importer protested claiming classification under paragraph 1310 of the act, hereinafter quoted. The board sustained the protest and the Government appealed to this court.

Inasmuch as the board has definitely found that the importation, so far as it is a fabric, consists of linen handkerchiefs cut in half and the record contains nothing to justify a conclusion that such is not the fact, we are of opinion that it is not classifiable under paragraph 1016, which provides only for—

handkerchiefs composed wholly or in chief value of vegetable fiber other than cotton, finished or unfinished, not hemmed, * * * ; hemmed or hemstitched, or unfinished having drawn threads, * * *

One half of a handkerchief is not a handkerchief, and if finished, which would not seem to be commercially practicable, it would not then be a handkerchief, so far as this record shows.

We pass, therefore, to the consideration of the next question raised, which is whether the merchandise may be classified under paragraph 1310 of the act. We quote the relevant part of that paragraph, but the numbers prefixed to the various subdivisions thereof are placed there by us for the purpose of more readily identifying such provisions.

(1) Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music·in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem;

(2) All other, not specially provided for, 25 per centum ad valorem;

(3) Blank books, slate books, drawings, engravings, photographs, etchings, maps, and charts, 25 per centum ad valorem;

(4) Book bindings or covers wholly or in part of leather, not specially provided for, 30 per centum ad valorem;

(5) Books of paper or other material for children's use, printed lithographically or otherwise, not exceeding in weight twenty-four ounces each, with more reading matter than letters, numerals, or descriptive words, 25 per centum ad valorem;

(6) Booklets, printed lithographically or otherwise, not specially provided for, 7 cents per pound;

(7) Booklets, wholly or in chief value of paper, decorated in whole or in part by hand or by spraying, whether or not printed, not specially provided for, 15 cents per pound;   *   *   *

The remaining portions of the paragraph relate to post cards of various kinds, views of landscapes, etc., greeting cards and gift cards, including those "in the form of folders and booklets."

In considering the question presented it is necessary to refer to paragraph 329 of the act of 1913, which reads as follows:

Books of all kinds, bound or unbound, including blank books, slate books and pamphlets, engravings, photographs, etchings, maps, charts, music in books or sheets, and printed matter, all the foregoing, and not specially provided for in this section, 15 per centum ad valorem. Views of any landscape, scene, building, place or locality in the United States, on cardboard or paper, not thinner than eight one-thousandths of an inch, by whatever process printed or produced, including those wholly or in part produced by either lithographic or photogelatin process (except show cards), bound or unbound, or in any other form, 20 cents per pound; thinner than eight one-thousandths of one inch, $2 per thousand.

Paragraph 1310 of the present tariff act shows a legislative intent to establish a new test for classification, that is, *foreign authorship*, for certain articles, and to make specific and definite provision as to others. It is a revision, a substantial reenactment, of part of paragraph 329, and includes merchandise named in other paragraphs of that act. Our first three subdivisions of paragraph 1310 cover substantially the same articles mentioned in the first sentence of paragraph 329. Blank books, slate books, engravings, photographs, etchings, maps, and charts found in that sentence have by Congress been excluded from subdivisions (1) and (2) and placed in subdivision (3), leaving only in subdivision (1) such things as are susceptible of authorship in the sense that word is ordinarily used.

Webster defines "author" as "one who composes or writes a book, a composer as distinguished from an editor, translator, or compiler," and defines "authorship" as "the quality or state of being an author." There are other meanings given to these words, but we think the foregoing is the sense in which the word "authorship" is used in paragraph 1310. A mere mechanical production, such as the importations here, is not, we think, susceptible of authorship as that word is used in the paragraph.

Subdivision (2) is elliptical. The board filled the ellipsis by inserting the word "books" after "all other," and found the merchandise here to be books.

We are of opinion that Congress intended that the ellipsis might only be filled by inserting therein the articles named in subdivision (1) which, though susceptible of authorship, were not, in fact, of *bona fide* foreign authorship and that no articles not susceptible of authorship should be classified under either subdivision (1) or (2). If such had not been the congressional intent, it was unnecessary to provide *eo nomine* for blank books and slate books in subdivision (3), because if subdivision (2) included all books, regardless of whether or not they were susceptible of authorship, blank books and slate books would have fallen within subdivision (2), the rate of duty thereunder being the same. In addition, we note that paragraph 1310 is found in Schedule 13, relating to papers and books, while other schedules contain provisions covering apparently every conceivable kind of textile and textile fabrics.

It is hardly conceivable that Congress intended that such things as handkerchiefs, napkins, towels, as well as samples of roofing paper and a great many other varieties of merchandise, textiles or otherwise, unnecessary to mention, which for convenience, for purposes of advertising and promoting the sales of the articles which they represent, are, it is well known, bound in a portfolio or book form, should be classified as books under subdivision (2) when, in fact, they lack every essential of a book except that of binding, and the merchandise contained between the covers of the so-called book is provided for in various other paragraphs of the tariff act.

But if it were held that subdivision (2) covered articles in book form that were not susceptible of authorship, we are still of opinion that the merchandise here is not classifiable thereunder, because it is not a book in the common meaning of that word as used in paragraph 1310. It may be termed a book containing samples or a book of samples, but it is not a sample book. For the *purpose* for which it is used it is no more a book than a box containing the same samples, or a stiff cardboard with the samples attached, would be. The binding may make the handling thereof more convenient and may preserve the samples, but the entirety contains no printed matter that entitles it to be designated as a book.

In *Drury* v. *Ewing*, 7 Fed. Cas. 1113, a copyright case, it is said. a book "must be the product of thought and mental toil."

In *Matheson* v. *United States*, 99 Fed. 261, small samples of cloth goods arranged on cardboards, with printed descriptions of the goods around the samples, the boards folded into book form, were held not to be publications as of *books*, maps, etc., but rather exhibitions of the samples for advertising purposes.

In *Read* v. *Certain Merchandise*, 103 Fed. 197, the importation was printed sheets of a scientific work unbound. The question was, Were they books? The court held they were and referred with ap-

proval to the opinion below, in which it was said that collected sheets "containing in orderly and connected fashion the record of the intellectual and literary work of the author" was a book unless a narrower definition was prescribed by law.

In this connection reference for information may be had to *Macmillan Co.* v. *United States*, 116 Fed. 1018; *Downing* v. *United States*, 130 Fed. 393, and *Downing & Co.* v. *United States*, 140 Fed. 92, T. D. 29437, G. A. 6843; T. D. 28300, Abstracts 16005 and 16014; T. D. 31911, G. A. 7285; T. D. 39099, G. A. 8529.

Importer claims that T. D. 14639, G. A. 2397, is authority for the proposition that a book of samples may be classified as a book. In that case the so-called books contained some 60 sample leaves of various kinds of papers with an advertisement on the front in German text, each leaf containing a description in English and certain foreign languages of the kind of paper represented thereby. The question was whether the merchandise was entitled to free entry as books or pamphlets printed exclusively in a language other than English. In a short opinion the board said they could not be classified as printed books, but, nevertheless, found as a fact that they were books not in a language exclusively other than English.

Importer also relies upon the case of *Max Adler*, Abstract 38100, which involved paragraph 329 of the act of 1913. The merchandise consisted of portfolios composed of cardboard and cotton, the latter being the component material of chief value. Samples of cotton lace and embroidery were pasted on pieces of stiff paper which were inserted in the flaps of the portfolios. These pieces of paper were removable at will. No duty was levied upon the samples of lace and embroidery, the only question being how the portfolios should be classified. The board held that they were classifiable as books under paragraph 329, and it is apparently upon the authority of this case that the decision below rests.

In *Schneider* v. *United States*, T. D. 40390, G. A. 8049, the board also adopted the rule of the *Adler* case in construing paragraph 1310 now under consideration here.

Without pausing to inquire, in view of the cases we have cited, whether or not the decision in the *Adler* case was correct, we think, in view of the differences between paragraphs 329 and 1310, that that case is not authority for this.

It is of some importance to note that for a long time the Treasury Department regarded the samples by which to sell goods of the class or kind they represented as possessing no commercial value and not dutiable, although the law did not grant them such exemption. This matter was fully discussed in *Badische* v. *United States*, 4 Ct. Cust. Appls. 374. See also *Gernet* v. *United States*, 4 Ct. Cust. Appls.

387. Some of the cases on classification of samples arose under this practice.

The tariff act of 1913, section J, subsection 4, contained a provision for the free entry of certain samples. The act of 1922, section 308, now specifically provides how free entry·may be given to samples used solely in taking orders for merchandise. These provisions certainly tend to support the conclusion that Congress did not intend that such samples as those here, even though bound in a manner to simulate books, should be classified as books.

Importer further relies upon a long continued uniform administrative practice in classifying merchandise like that at bar as books. No proof of such practice is adduced other than various decisions of the Board of General Appraisers, some of which we have already referred to and all of which we have examined. It is sufficient without referring to them in detail to say that, assuming but not admitting that an administrative practice can be proven in that way, they fall far short of establishing it, and especially is this so in view of the fact that the Treasury Department, as pointed out, had erroneously, for many years, admitted samples in book form or otherwise to free entry contrary to law. An erroneous administrative practice can not control as against a plain provision of the statute. *Lloyd* v. *United States*, 9 Ct. Cust. Appls. 280.

It would seem that the merchandise here was classifiable under paragraph 1021 of the act which provides for—

All woven articles, finished or unfinished, and all manufactures of vegetable fiber other than cotton, or of which such fibers or any of them is the component material of chief value, not specially provided for, * * *—

as suggested by the Government.

In this connection see *United States* v. *Milbank, Leaman & Co.*, 14 Ct. Cust. Appls. 166, T. D. 41693.

However this may be, we conclude that the judgment below must be reversed without approving the collector's classification.

*Reversed.*