BLOCK HOUSE (INC.) *v.* UNITED STATES (No. 3564)[1]

United States Court of Customs and Patent Appeals, January 23, 1933

*James W. Bevans* (*Joseph F. Donohue* of counsel) for appellant.
*Charles D. Lawrence,* Assistant Attorney General (*Marcus Higginbotham, jr.,* special attorney, of counsel), for the United States.

---

[1] T. D. 46233.

[Oral argument December 7, 1932, by Mr. Donohue and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, overruling a protest of appellant against the classification and assessement with duty of certain merchandise imported at the port of New York at the rate of 70 per centum ad valorem under paragraph 1513 of the Tariff Act of 1930. Said protest was overruled without acquiescing in the collector's action.

The merchandise is described in the decision of the court below as follows:

> The merchandise in question is invoiced as booklets. The official samples, collective Exhibit 1, consists of five paper-covered books or booklets of six to a dozen leaves, printed on each side with a series of colored designs or plans of buildings and structures. The only printing on the inside pages, outside of the designs, is letters, numerals, and scales of length in inches or millimeters. On the covers are printed in various languages, including English, what appear to be instructions as to the use of various toy building blocks, words in foreign languages and in two cases in English, indicating that the books were "designed and executed by Dr. Richter's Art Department, Rudolstadt (Germany)," that they are copyrighted, and are printed or made in Germany.

The merchandise was described by the collector as—

> toy books without reading matter other than letters, numerals or descriptive words, suitable only for the amusement of children.

Appellant duly protested the classification and assessment with duty, claiming the merchandise to be dutiable at 25 per centum ad valorem under paragraph 1410 of said tariff act. The pertinent part of said paragraph 1410 reads as follows:

> PAR. 1410. Unbound books of all kinds, bound books of all kinds, except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; all other, not specially provided for, 25 per centum ad valorem; * * *.

Upon the trial in the court below, appellant introduced the testimony of one witness; it also offered in evidence samples of the merchandise involved, which were received in evidence as collective Exhibit 1. The Government offered no testimony.

The lower court in its decision held that the books involved were not toy books and were improperly classified by the collector; that there was no proof that the books are not of foreign authorship, but that the evidence established that the books were of foreign authorship and hence fell under the provision of said paragraph 1410 first above quoted, which provides for duty thereon at the rate of 15 per centum ad valorem; that the onus rested upon appellant, not only to

prove that the collector's decision was erroneous, but that the claim in the protest was well founded; and that, appellant having failed to establish that the books were classifiable under the provision of said paragraph 1410 claimed in the protest, viz, at the rate of 25 per centum ad valorem, the protest should be overruled without acquiescing in the collector's classification.

Judgment was entered accordingly, and from such judgment this appeal is taken.

Appellant contends that the lower court erred in holding that the proof established that the books are of foreign authorship, and also erred in holding that the burden of proof was upon appellant to show that the books were not of foreign authorship. It further contends that it was not necessary to prove the authorship of the books where no claim of a lower rate is made by reason of foreign authorship.

The Government concedes that the books were improperly classified by the collector but contends that appellant failed to make the proper claim in its protest.

Appellant earnestly contends that there was no burden upon it to establish that the books are *not* of foreign authorship and that in the absence of such proof the latter provision of that portion of paragraph 1410 hereinbefore quoted is applicable; that the evidence does not establish that the books are of foreign authorship, and even if such fact were established, appellant not having elected to claim the lower rate of 15 per centum ad valorem, the books should be classified under the latter provision of said paragraph at 25 per centum ad valorem.

We would first observe that paragraph 1410 provides that books of the character therein described, "if of bona fide foreign authorship," shall be dutiable at the rate of 15 per centum ad valorem. There is in the record no proof of authorship of the books here in question except that two of the exhibits, representing a part of the books involved, bear statements upon the first page, printed in English and German, to the effect that they were copyrighted and printed or made in Germany and "designed and executed by Dr. Richter's Art Department, Rudolstadt (Germany.)" The other exhibits have similar statements printed in German. Under the facts in this case we do not think that the statements so appearing upon said books are sufficient to warrant the finding of the lower court that the books are of foreign authorship and not dutiable at 25 per centum ad valorem under said paragraph 1410. In order to come within the 15 per centum provision of paragraph 1410 it is required that the foreign authorship be "bona fide," thus indicating that Congress did not intend that books merely purporting to be of foreign authorship should fall within said provision, but it must further appear that such foreign authorship is bona fide.

We next come to consider whether there was any burden upon appellant to establish that the books were not of bona fide foreign authorship in order to entitle it to classification of the books under the latter provision of the quoted portion of said paragraph 1410, at the rate of 25 per centum ad valorem. The lower court held that such burden was upon appellant and that it had failed to sustain it.

Had said paragraph 1410 provided for a higher rate of duty upon books of bona fide foreign authorship than upon other books coming within the quoted portion of said paragraph, we would agree with the lower court and the Government that the burden was upon appellant to show that the books were not of foreign authorship, it having claimed a lower rate under another provision of the paragraph; but such is not the case here. If appellant, through inability to prove that the books were of bona fide foreign authorship, saw fit to waive any claim to a lower rate of duty and accept a higher rate, we see no reason why it should not be permitted to do so. It must be remembered that the inherent character of the books is the same under both of the quoted provisions of paragraph 1410 and that the variation in duty is based solely upon authorship. It could not have been the intention of Congress in enacting the quoted provision of paragraph 1410 that books of the character described therein, the authorship of which was unknown, should not be dutiable under either of the quoted provisions of the paragraph. Clearly the books here involved are dutiable under paragraph 1410. The protest so claims them, and at the higher rate therein provided for books having the physical characteristics of those here involved. Upon receipt of the protest by the collector, after satisfying himself that they were dutiable under said paragraph 1410, he was not called upon to make any inquiry as to whether they were classifiable at a lower rate than that claimed by appellant, appellant having waived in its protest any claim to a lower rate by virtue of the books being of foreign authorship, and therefore, for the purposes of classification they should have been deemed by the collector *not* to be of foreign authorship. In other words, whatever the actual facts may be, the books should not be considered to be of foreign authorship under the issue raised by appellant in its protest.

To illustrate the application of the rule sought to be established by the Government, many books are published anonymously, that is, the authorship remains secret. Were we to find the rule to be as contended for by the Government and held by the lower court, where anonymous books having the physical character of those provided for in said quoted provisions of paragraph 1410 are imported, and are classified by the collector under some paragraph other than paragraph 1410, no matter how erroneous such classification may be, no relief could be had by the importer even though he made alternative claims

of each of the rates of duty provided for in said quoted provisions of paragraph 1410. He could not secure classification under the first quoted provision because he could not establish that they were of foreign authorship, nor could he establish that they were not of foreign authorship and entitled to classification under the second-quoted provision of said paragraph. It seems clear to us that in such case Congress intended that the books should take the higher rate provided in said quoted portion of the paragraph.

Similarly, in the instant case, had appellant made claims under both of the provisions of paragraph 1410 hereinbefore quoted, under the ruling of the lower court it could not secure classification of the books as being of domestic authorship by reason of the presence on the books of the printed matter hereinbefore referred to, the same constituting an admission against interest; on the other hand, under said ruling, it could not secure classification of the books as being of foreign authorship on this record, because, as to such claim, the printed matter would constitute merely a self-serving statement and be of no probative force or effect to establish their foreign authorship.

Appellant cites in support of its contention the case of *General Electric Co.* v. *United States,* 7 Ct. Cust. Appls. 156, 484, T. D. 36463, T. D. 37159, in which the classification of certain parabolic mirrors was involved, under the provisions of paragraph 103 of the Tariff Act of 1909. Under this paragraph different rates were provided for different sizes of mirrors. The appellant in that case in its protest claimed the rate named in said paragraph for mirrors within certain sizes. The proof showed that none of the mirrors there involved were within the sizes provided for at the rate claimed but were of larger sizes subject to a higher rate than that claimed in the protest. The lower court overruled the protest, and this court first reversed the judgment appealed from; later, upon a rehearing, while adhering to the views expressed in its first opinion, the court modified its order by entering an order reversing the judgment of the lower court and remanding the case for further proceedings, with directions to determine the respective sizes of the mirrors and to direct liquidation in accordance with such determination.

It will be observed that in that case the merchandise was dutiable at a rate higher than that claimed in the protest, while in the case at bar the Government claims that appellant has not established that the merchandise is not dutiable at a rate lower than that claimed in the protest.

It is unnecessary for us to consider the court's decision in the case last cited, in so far as it related to a higher rate than that claimed, but we think it may be considered in support of the proposition that where an importer *may* be entitled to a lower rate than that claimed, the lower rate not being claimed, failure to establish that it is *not*

dutiable at the lower rate, the physical characteristics of the goods provided for under both rates being the same, should not bar him from receiving a classification and assessment for duty at the higher rate claimed.

The Government, in support of its contention, relies upon the case of *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031, wherein, speaking of paragraph 1310 of the Tariff Act of 1922 (the predecessor of paragraph 1410 of the Tariff Act of 1930, said paragraphs being, so far as the question here involved is concerned, identical), the court said:

Paragraph 1310 of the present tariff act [Tariff Act of 1922] shows a legislative intent to establish a new test for classification, that is, *foreign authorship*, for certain articles, and to make specific and definite provision as to others. (Italics quoted, brackets ours.)

Appellant contends that the language above quoted was *obiter* as the case decided that the merchandise involved did not come within either provision of said paragraph 1310.

We do not find it necessary to discuss the court's construction of said paragraph 1310 in the case last cited for the reason that, as we view this case, all books having the physical characteristics of those described in the hereinbefore quoted provisions of said paragraph 1410, not claimed by protest to be of bona fide foreign authorship, should be considered to be not of bona fide foreign authorship and are classifiable under said paragraph 1410 at the rate of 25 per centum ad valorem as claimed by appellant.

For the reasons stated the judgment of the lower court is *reversed* and the case is *remanded* for further proceedings not inconsistent with the views herein expressed.