BARRY & STAINES LINOLEUM, INC. *v.* UNITED STATES (No. 4022)[1]

[1] T. D. 48831.

United States Court of Customs and Patent Appeals, January 25, 1937

*Walden & Webster* (*J. L. Klingaman* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*Ralph Folks* and *Richard H. Welsh*, special attorneys, of counsel), for the United States.

[Oral argument December 10, 1936, by Mr. Klingaman and Mr. Folks]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The merchandise here involved is described in the decision of the United States Customs Court as follows:

The case was submitted upon a sample of the imported merchandise admitted in evidence as Exhibit 1 and a stipulation entered into in open court by and between counsel for the respective parties to the effect that the merchandise is lithographically printed in part and that each of the lithographically printed pages does not exceed 12 one-thousandths of one inch in thickness.

The sample consists of a series of lithographically printed designs of linoleum, bound together in the form of a book, issued by the Linoleum Manufacturing Co., Ltd., which has its main office in London, England. Preceding the series of printed designs is a single page giving on one side the various offices, factories, and warehouses of the company, a list of its board of directors, and on the other side a telegraphic code for the convenience of prospective purchasers of linoleum in ordering any one of the designs. In addition each design has printed thereon a number. On the back there is printed in duplicate a representation of the trade mark, the number, the name, the width of the linoleum, together with the name, telegraphic code word, and the address of the manufacturer.

It is clear from the record that the articles are designed for use and are used primarily by salesmen of linoleum. The lithographing upon the front faces of the sheets of paper reproduces different linoleum designs so that those interested have before them reproductions on paper showing the appearance of the actual linoleum offered for sale. The printed matter on the backs of the sheets and on the other sheets is partly in the nature of advertising matter and partly arranged for convenience of those who desire to make orders by mail or by telegraph.

The collector classified the articles under paragraph 1406 of the Tariff Act of 1930, assessing duty at 30 cents per pound. The importer protested, making several alternative claims, the two claims finally relied upon being under either paragraph 1410 or paragraph 1413 of the act.

The pertinent portions of the contesting paragraphs read:

PAR. 1406. Pictures, calendars, cards, labels, flaps, cigar bands, placards, and other articles, composed wholly or in chief value of paper lithographically printed in whole or in part from stone, gelatin, metal, or other material (except boxes, views of American scenery or objects, and music, and illustrations when forming part of a periodical or newspaper, or of bound or unbound books, accompanying the same), not specially provided for, shall be subject to duty at the following rates: * * * all articles other than those hereinbefore specifically provided for in this paragraph, not exceeding twelve one-thousandths of one inch in thickness, 30 cents per pound; * * *.

PAR. 1410. Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets, or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; all other, not specially provided for, 25 per centum ad valorem * * *.

PAR. 1413. * * * manufactures of paper, or of which paper is the component material of chief value, not specially provided for, all the foregoing, 35 per centum ad valorem * * *.

Importer seems first to have pressed only the claim under paragraph 1410, *supra*, but, following the adverse decision of the trial court upon that claim application for rehearing was made and granted and the claim under paragraph 1413, *supra*, was then alternatively

urged. This claim was also overruled and, the court adhering to its original decision as to the other claim, the instant appeal was taken to this court.

The first question logically to be considered is the claim under paragraph 1410, *supra*, and it may be said that while the protest itself claims "at 15% or 25% *ad valorem* under par. 1410," the argument before us on behalf of appellant is directed, so far as the claim under this paragraph is concerned, solely to the 25 per centum rate, there being no insistence upon the 15 per centum rate.

In the case of *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031, this court had occasion to construe parts of paragraph 1310 of the Tariff Act of 1922, which, as to the issues here, was the prototype of paragraph 1410, *supra*. We there subdivided the paragraph, supplying numerals for convenience in identifying the various provisions. So far as here pertinent, the subdivisions may be restated as follows:

(1) * * * bound books of all kinds * * * not specially provided for, if of *bona fide* foreign authorship * * *.
(2) All other, not specially provided for, * * *.

In construing these provisions, we pointed out that, by the insertion of the phrase "if of *bona fide* foreign authorship", Congress had introduced, into the 1922 act, a new test for classification, and further that subdivision (2) was elliptical. We then said:

The board [now the United States Customs Court] filled the ellipsis by inserting the word "books" after "all other", * * * .

We are of opinion that Congress intended that the ellipsis might only be filled by inserting therein the articles named in subdivision (1) which, though susceptible of authorship, were not, in fact, of *bona fide* foreign authorship and that no articles not susceptible of authorship should be classified under either subdivision (1) or (2). * * * .

The reasons for so construing the language were stated, other portions of the paragraph being cited which it was stated would have been unnecessary under the board's construction. The paragraph now at issue being substantially the same as the paragraph there construed, that construction is controlling here, and so the test as to the claim under paragraph 1410, *supra*, must be whether the articles here involved are books susceptible of authorship.

The merchandise which was there at issue consisted of samples of linen handkerchiefs, cut in half, having printed labels pasted thereon descriptive of the merchandise and each marked with a certain quality number, the handkerchiefs being bound together in book form in "a portfolio of a front and back cover." No paragraph corresponding to paragraph 1406, *supra*, was involved in that case, the merchandise having been classified under paragraph 1016 of the 1922 act providing for certain handkerchiefs. While such classification was there

expressly disapproved by us, we also reversed the holding of the trial tribunal which sustained importer's claim under paragraph 1310, upon the ground that the articles were not books susceptible of authorship.

While, therefore, the issue is different here in that the partly lithographed sheets of paper differ in their inherent nature from the linen handkerchiefs there involved, and also in the fact that importer's claims are under provisions different from the provision under which the importer there claimed, much that we then said in construing the prototype of paragraph 1410, *supra*, is here directly in point. For example, we said:

Webster defines "author" as "one who composes or writes a book, a composer as distinguished from an editor, translator, or compiler", and defines "authorship" as "the quality or state of being an author." There are other meanings given to these words, but we think the foregoing is the sense in which the word "authorship" is used in paragraph 1310. A mere mechanical production, such as the importations here, is not, we think, susceptible of authorship as that word is used in the paragraph.

We also said there:

It is hardly conceivable that Congress intended that such things as handkerchiefs, napkins, towels, as well as samples of roofing paper and a great many other varieties of merchandise, textiles or *otherwise*, unnecessary to mention, which for convenience, for purposes of advertising and promoting the sales of the articles which they represent, are, it is well known, bound in a portfolio or book form, should be classified as books under subdivision (2) when, in fact, they lack every essential of a book except that of binding, and the merchandise contained between the covers of the so-called book is provided for in various other paragraphs of the tariff act. [Italics supplied here.]

But if it were held that subdivision (2) covered articles in book form that were not susceptible of authorship, we are still of opinion that the merchandise here is not classifiable thereunder, because it is not a book in the common meaning of that word as used in paragraph 1310. It may be termed a book containing samples or a book of samples, but it is not a sample book. For the *purpose* for which it is used it is no more a book than a box containing the same samples, or a stiff cardboard with the samples attached, would be. The binding may make the handling thereof more convenient and may preserve the samples, but the entirety contains no printed matter that entitles it to be designated as a book.

It seems obvious that if sheets or samples of actual linoleum had been used here instead of the paper sheets on which the linoleum designs were reproduced, the case would fall squarely within the doctrine of the *Field & Co.* case, *supra*, to the extent that the merchandise would not be classifiable under paragraph 1410, *supra*. While there is more printed matter in connection with the articles here involved than was present in connection with the portfolios of half handkerchiefs there involved, the inherent nature of such printed matter is practically the same in both instances, and "authorship", as there defined and applied, is no more present here than it was there. Disregarding the printed language, can it be said then that

using paper sheets upon which there are reproductions of linoleum designs serves to render the articles books within the meaning of that term as there construed? We are unable so to conclude.

It is true that Funk & Wagnalls New Standard Dictionary gives as one definition of book:

A number of sheets of paper bound or stitched together, whether blank, written, or printed, used for any purpose.

Counsel for appellant argue that the articles at issue "fit into this definition, fill it out completely, and leave no overlap."

Had Congress said "bound books of all kinds" without more, it is possible that the broad definition quoted might be applicable here, but we may not apply that definition in a manner which would eliminate the limitation that Congress itself placed upon the phrase by the subsequent language used. It is noted that paragraph 1410, *supra*, makes specific provision for blank books, slate books, etc., and there is no claim here under that provision.

Counsel for appellant have cited our decision in the case of *United States* v. *American Railway Express Co. et al., F. W. Myers & Co. et al.* v. *United States*, 17 C. C. P. A. (Customs) 10, T. D. 43317, where certain paper-bound books issued by the Canadian National Railways Co., intended for gratuitous distribution for advertising purposes, containing reading matter, pictorial illustrations, etc., were held dutiable as printed matter of *bona fide* foreign authorship. We think our decision there shows quite clearly the distinction in character between the printed matter then before us and that involved in the *Field & Co.* case, *supra*. That which is here involved is similar in its nature, although greater in quantity, to that present in the *Field & Co.* case, *supra*, but is dissimilar in its nature to that involved in the *American Express Co.* case, *supra*.

Counsel for appellant argue, in effect, that in no event is the merchandise at issue covered by paragraph 1406, *supra*, because it comes within the exception contained in the parenthetical provision thereof, expressed in the clause, "except * * * illustrations when forming part of * * * books, accompanying the same."

The argument so made seems, of necessity, to be predicated upon two premises; first, that the articles are books and, second, that the lithographed sheets constitute "illustrations." "Books" are not elsewhere mentioned in paragraph 1406, nor do we find any paragraph in the entire tariff act which mentions "books" that reasonably may be comparable to the articles here at issue, except paragraph 1410, *supra*.

It is our view, therefore, that when Congress in paragraph 1406 provided for various lithographically printed articles, but excepted therefrom "illustrations when forming part of * * * bound or unbound books, accompanying the same," it was intended that the

"bound or unbound books" should be those and only those provided for in paragraph 1410, *supra*. In other words, if a book provided for in paragraph 1410 has lithographically printed illustrations forming a part thereof and accompanying same, such illustrations are not dutiable under paragraph 1406, *supra*, but are classifiable under paragraph 1410, *supra*, as a part of the whole book which they accompany or which accompanies them. On the other hand, if the lithographically printed paper does not form part of a book such as is classifiable under paragraph 1410, *supra*, it does not, for tariff purposes, form part of any book, and so does not come within the exception provision of paragraph 1406, *supra*.

Under this view as to the proper construction of the pertinent language of the paragraphs, it does not seem necessary to enter upon a discussion of the meaning of "illustrations", as that term is used in paragraph 1406, *supra*. The term appears in the paragraph only in connection with periodicals, newspapers, and bound or unbound books, and need not be here considered in connection with any other provision of the paragraph.

It may be remarked that even were it held that by reason of the exception in paragraph 1406, *supra*, the articles were removed from that paragraph, it would not of necessity follow that they are classifiable under paragraph 1410, *supra*. We should simply be confronted with a situation similar to that existing in the *Field & Co.* case, *supra*, where we disapproved both the classification of the collector and the claim of the importer with the result that the duty assessment of the collector, in that particular case, remained in force.

In the instant case, however, importer presents an alternative claim that the merchandise is properly classifiable under paragraph 1413, *supra*, as a manufacture of paper, not specially provided for.

This claim involves consideration of the relative specificity of paragraphs 1406 and 1413, as is, in effect, pointed out by the trial court. In its decision that court refers to its decision (unappealed from) in the case of *W. H. S. Lloyd Co.* v. *United States*, T. D. 43495, 56 Treas. Dec. 114, which arose under the Tariff Act of 1922 (where samples of wall paper bound in book form were held properly classifiable as manufactures of paper not specially provided for), saying:

Citing *United States* v. *Field*, 14 Ct. Cust. Appls. 376, T. D. 42031, we excluded said merchandise from the book provisions in paragraph 1310 of the Tariff Act of 1922, and relegated it for tariff classification to the general provision in paragraph 1313 of said act for manufactures of paper not specially provided for. A like conclusion would be here necessary under the act of 1930 were it not for the fact that the present articles are concededly lithographically printed and as such specifically provided for under paragraph 1406 of said act, as classified by the collector. That provision of course takes precedence over the one invoked under paragraph 1413 for manufactures of paper not specially provided for, and we so hold.

We think there is no error in this holding. It seems obvious that the provision of paragraph 1406, *supra*, for "* * * articles, composed wholly or in chief value of paper lithographically printed * * *" taken in connection with the further provision respecting "articles * * * not exceeding twelve one-thousandths of one inch in thickness" (it being stipulated that the sheets of paper here involved do not exceed that thickness) more specifically covers the merchandise than does the general provision of paragraph 1413 for "manufactures of paper * * * not specially provided for."

The judgment of the United States Customs Court is *affirmed*.