C. J. TOWER & SONS *v.* UNITED STATES (No. 4876)[1]

United States Court of Customs and Patent Appeals, January 9, 1957

*Barnes, Richardson & Colburn* (*Joseph Schwartz* of counsel) for appellant.
*George Cochran Doub*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh* and *William J. Vitale*, trial attorneys, of counsel), for the United States.

[Oral argument December 5, 1956, by Mr. Schwartz and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

---

[1] C. A. D. 634.

RICH, Judge, delivered the opinion of the court:

This is an appeal by the importer from the judgment of the United States Customs Court, Third Division, C. D. 1764, which overruled six protests (consolidated for trial) against the classification of imported fresh (or green) sweet corn on the cob, with husks on, as vegetables in their natural state not specially provided for, dutiable at 25 per centum ad valorem, under paragraph 774 of the Tariff Act of 1930 as modified by the General Agreement on Tariffs and Trade (T. D. 51802).

The importer claimed below, as it does here, that the instant merchandise should be dutiable as "corn or maize" under paragraph 724 of the Tariff Act of 1930, at the rate of 25 cents per bushel of 56 pounds.

The provisions of the statute are:

PAR. 774. Vegetables in their natural state: * * * all other, not specially provided for, 50 per centum ad valorem: * * *

(The trade agreement, T. D. 51802, reduced the rate to 25 percent.)

PAR. 724. Corn or maize, including cracked corn, 25 cents per bushel of fifty-six pounds; * * *.

The sole issue is whether the common table vegetable familiarly known as "corn on the cob" should be classified under paragraph 724, as appellant contends, or under paragraph 774.

The trial court wrote two opinions overruling the protests, one by Judge Donlon, the other, a concurring opinion, by Judge Ekwall in which Judge Johnson joined.

Judge Donlon's opinion deals with the history of the paragraphs in question from 1890 to date, considered together with a long-standing administrative practice which is evident from what is said in the Treasury Department ruling dated October 20, 1915, T. D. 35806 (29 Treas. Dec. 385) in the form of a letter sent to the Collector of Customs at Ogdensburg, N. Y., which reads (emphasis ours):

TREASURY DEPARTMENT, *October 20, 1915.*

SIR: The department is in receipt, by reference from the Auditor for the Treasury Department, of your letter of the 27th ultimo, relative to the classification of a shipment consisting of *ears of green corn*, which it appears you have assessed with duty at the rate of 15 percent ad valorem under paragraph 215 of the present tariff act as *vegetables in their natural state.*

You state that this assessment of duty was in accordance with the practice in your district *under the present tariff act and under the tariff acts of 1909 and 1897.*

In paragraph 235 of the tariff act of 1909 and paragraph 227 of the tariff act of 1897 corn or maize was specifically provided for as dutiable at the rate of 15 cents per bushel of 56 pounds, *but under the act of 1897 the department held, in two unpublished decisions, that green corn on the cob was dutiable as vegetables in their natural state* under paragraph 257 of the said act.

Under the present tariff act corn or maize is provided for as free of duty under paragraph 465, the entire paragraph reading "corn or maize." The *department is of the opinion that this specification of "corn or maize" was intended to cover only corn or maize dutiable under paragraphs 235 of the tariff act of 1909 and 227 of the*

*tariff act of 1897* [now Par. 724], and in view of the unpublished decisions mentioned it approves the practice at your port of assessing duty on green corn on the cob at the rate of 15 per cent ad valorem under paragraph 215 of the tariff act of October 3, 1913 [now Par. 774], as vegetables in their natural state not specially provided for.

Respectfully,                       Andrew J. Peters,
(14474.)                              *Assistant Secretary.*

Judge Donlon correctly pointed out that "No evidence was adduced to overcome the presumption that this administrative practice was uniform and continuing. Indeed, it is this very administrative practice, detailed in the published 1915 ruling, to which plaintiff's instant protests, covering 1953 importations, relate."

As Judge Donlon's opinion also points out, in the studies prepared by Congress preliminary to the tariff revision in 1922, published as "Summary of Tariff Information, 1921," there appears on pages 800–1, under the heading "VEGETABLES IN THEIR NATURAL STATE, N. S. P. F.," a statement that 271,584 acres of the vegetable "sweet corn" were produced in 1919. This summary had specific reference to the counterparts, in earlier tariff acts, of present paragraph 774, insofar as "vegetables in their natural state, not specially provided for" are concerned.

From this, and after comparison with data under the heading "CORN" related to earlier counterparts of paragraph 724, Judge Donlon concluded that there is clear indication that Congress knew of and endorsed the long-standing administrative practice of considering "sweet corn on the cob" as a vegetable by continuing to enact the two separate classifications.

The concurring opinion of Judge Ekwall gives emphasis to the different natures of "sweet corn" and the other types of corn used for flour and livestock feed, but reaches the same conclusion as Judge Donlon for substantially the same reasons.

Appellant argues that "the provision for corn or maize in paragraph 724 is plain and unambiguous, and includes all corn, no matter what variety." Appellant says "there is no room for resort to rules of construction."

Appellant cites *United States* v. *Fung Chong Co.*, 34 C. C. P. A. (Customs) 40, C. A. D. 342, for its holding that an *eo nomine* provision for "oranges" included all varieties. In that case this court held that dried and preserved kumquats, imported in jars, were dutiable under the provision in paragraph 743 for oranges, rather than under paragraph 752 as prepared or preserved fruit. This case is distinguishable from the *Fung Chong* case in that there was nothing in that case to indicate a legislative intent to include kumquats packed in jars in paragraph 752 whereas here there is abundantly clear evidence that Congress intended "sweet corn on the cob" to be classi-

fied as a vegetable under paragraph 774 rather than under paragraph 724 as "corn."

Appellant also cites numerous dictionary definitions to the effect that *all* corn is "corn" and that "sweet corn on the cob" is but a type of corn. While we do not disagree with the definitions, we do not consider them to be controlling in the present situation.

Appellant cites *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031, and *Rapken* v. *United States*, 25 C. C. P. A. (Customs) 268, T. D. 49393, for the propositions "that an erroneous administrative practice cannot control as against a plain provision of the statute" and that it "does not preclude the courts from construing or interpreting a statute contrary to such practice when an issue as to its interpretation is presented for the first time." We agree that a long standing practice, *if* it is shown to be erroneous, does not become controlling or irreversible simply because it is venerable. However, we must be convinced of the error and appellant has not shown that the practice of classifying sweet corn on the cob as a vegetable is erroneous.

Appellant presses the point that since there is no ambiguity in the plain words corn or maize, "The well-established rule of law under such circumstances is that there is no room for resort to rules of construction, legislative history, or any extraneous aids," citing many cases which we have considered.

The United States Supreme Court, in *United States* v. *American Trucking Association*, 310 U. S. 534, said, p. 543:

Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." The interpretation of the meaning of statutes, as applied to justiciable controversies, is exclusively a judicial function.

When unambiguous competing terms in an act are used in an ambiguous manner, the ambiguity arising from the fact of dual inclusion of the merchandise, recourse may be had to legislative history to determine the intent of Congress. *United States* v. *E. De Grandmont, Inc.*, 21 C. C. P. A. (Customs) 17, T. D. 46345, and cases cited.

When an ambiguous statute has received administrative construction, continuously followed for a long time, and has been continuously reenacted without substantive change, it is presumed to have been reenacted with the existing construction. *United States* v. *B. Illfelder & Co.*, 17 C. C. P. A. (Customs) 197, T. D. 43646; *Semon Bache & Co.* v. *United States*, 17 C. C. P. A. (Customs) 273, T. D. 43690; *United States* v. *McGraw Wool Co.*, 19 C. C. P. A. (Customs) 205, T. D. 45296.

For the reasons given above, we find no error in the reasoning of the Customs Court and its judgment is therefore *affirmed*.

JACKSON, J., Retired, recalled to participate in place of COLE, J., absent because of illness.

O'CONNELL, J., was present at the argument of this case but, because of illness, did not participate in the decision.