**OUTLET BOOK CO., INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Court No. 85–01–00012.**

United States Court of
International Trade.

July 6, 1990.

---

White & Case, David S. Klafter and Mark de Gennaro, New York City, for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, New York City, Atty. in Charge, International Trade Field Office, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Al J. Daniel, Jr., Washington, D.C., for defendant.

## OPINION AND JUDGMENT

CARMAN, Judge:

Plaintiff Outlet Books contests the denial of a protest filed under sections 514, 515(a) of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1514, 1515(a) (1988). This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(a) (1988). The Court holds that the United States Customs Service (hereinafter Customs) improperly classified the subject merchandise as item 274.-60 (1984), Tariff Schedules of the United States (hereinafter TSUS) "Lithographs on paper: Not over 0.020 inch in thickness ... Other" and finds the correct classification to be TSUS item 270.25 (1984) "Books not specially provided for."

## BACKGROUND

Plaintiff is a New York corporation engaged in the business of publishing books, including art and pictorial books containing considerable graphic or pictorial content. In April and May of 1984, plaintiff imported the following shipments of bound, hardcover publications: *Boston: A Picture Book to Remember Her By, Boy George and Culture Club, The Story of Prince Charles, Landscapes of America* (hereinafter *Landscapes*), and *Michael Jackson.*

Customs initially classified all of the above-mentioned titles as "Lithographs on paper: Not over 0.020 inch in thickness ... Other" item 274.60, at a rate of 6 cents per pound. Customs subsequently reclassified all of the publications, with the exception of *Landscapes*, as "Books not specially provided for," TSUS item 270.25, at a free duty rate.

*Landscapes* consists of twelve pages of text followed by 288 pages of photographs with captions and fourteen pages entitled "List of Plates" describing and consecutively numbering each photograph to match the page upon which the photo appeared.

Prior to the commencement of this action, plaintiff's protest of Customs' classification was denied and plaintiff paid all liquidated duties, charges or exactions, (totalling $12,315.42).

## CONTENTIONS OF THE PARTIES

Plaintiff contends that *Landscapes* should be reclassified as a "Book not specially provided for" under TSUS item 270.-25 at a free duty rate and claims a refund of duties paid, with interest. In addition, plaintiff requests a declaratory judgment: (1) interpreting the TSUS provisions at issue, (2) declaring that the provisions mandate duty-free importation of all books regardless of their pictorial content, and (3) enjoining Customs to apply the tariffs according to the Court's declaration.

Defendant contends that the present classification is correct because *Landscapes* is a bound volume consisting overwhelmingly of pictorial matter. Defendant further contends that the rule of relative specificity requires classification under TSUS item 274.60 because it is more specific than the basket provision 270.25. If these two classifications were found to be equally applicable, defendant claims that, in accordance with General Interpretive Rules 10(c) and (d), the merchandise should be classified under the item that has the higher rate of duty. That classification would be TSUS item 274.60.

In the alternative, defendant suggests classification under TSUS item 274.75 (1984) "Printed matter not specially provided for: ... Other: Printed on paper in whole or in part by a lithographic process: Not over 0.020 inch thick" at a rate of 2 cents per pound.

## DISCUSSION

The headnotes to Schedule 2, Part 5, state in pertinent part:

1. Except for decalcomanias, labels, flaps, and bands, all of which are covered by the provisions therefor in this part, regardless of the nature of the printing thereon, this part covers only printed matter consisting essentially of textual or pictorial matter produced by any printing process, and similar matter in manuscript or typewritten form. The text may be set forth in any language by means of any kind of characters. With the exceptions above indicated, this part does not cover any article in which printing is merely incidental to the primary use of the article or in which printing is employed mainly for coloration or to produce a decorative or novelty effect....

2. For the purposes of this part—

    . . . .

    (b) the term *"books"* includes books, bound and not bound, and pamphlets;

Schedule 2, Part 5, headnotes 1 and 2.

It is uncontested by defendant that *Landscapes* "[i]n form, content, binding, appearance, and use, ... meet[s] all criteria for the generic term 'book' as it is universally understood, and [it is] in fact [a] book[ ]." Pretrial Order, Schedule C, Uncontested Facts at ¶ 6. Also uncontested are the following facts:

7. A lithograph is produced by making multiple direct impressions of solid colors from a single, flat plate of a material such as linoleum, wood, stone or metal. The original works reproduced in the books are photographs.

8. The term "lithograph" is commonly understood to mean, among other things, a work of fine art, such as a print, suitable for framing and display on a wall, often produced in a limited edition and signed and numbered by the artist.

9. Copies of the book *Landscapes of America* were produced by offset printing. In offset printing, separate photographic plates are made for each color. The image for each color is transferred to a round, rubber-blanketed cylinder, and then transferred to the paper. Non-primary colors are produced by printing dots of primary colors in close proximity so that an illusion of a mixed color is created. Offset printing is a mass medium.

10. Lithography is a general term which includes, among other things, the printing processes described in paragraphs 7, 8 and 9.

11. Most commercially available books are produced by offset printing, regard-

less of the relative amounts of textual and pictorial matter in the books.

*Id.* at ¶¶ 7–11.

### Classification of Books

In determining whether or not merchandise may be classified as a book, the Court first turns to the discussion of books in *Los Angeles Tile Jobbers, Inc. v. United States*, 63 Cust.Ct. 398, C.D. 3925 (1969). In *Los Angeles Tile Jobbers,* the Customs Court considered the classification of "six separate sheets of paper, imported in bulk and invoiced as printed brochures, each of which contain[ed] one or more illustrations of floor or wall tiles." 63 Cust.Ct. at 399. The court in *Los Angeles Tile Jobbers* began its discussion with the case of *United States v. Field & Co.*, 14 Ct.Cust.Appls. 376, T.D. 42,031 (1927). In *Los Angeles Tile Jobbers,* the court stated that in *Field & Co.,*

> the court indicated that in order to qualify as a book under that part of paragraph 1310 [which, as far as relevant to the *Los Angeles Tile Jobbers* case, was identical to paragraph 1410 of the Tariff Act of 1930 which covered "books ... not specially provided for" of bona fide foreign authorship] claimed by plaintiff, the article had to be susceptible of authorship. The court also quoted Webster's dictionary definition of "author" as "one who composes or writes a book, as composer as distinguished from an editor, translator, or compiler."

*Los Angeles Tile Jobbers,* 63 Cust.Ct. at 402.

The court in *Los Angeles Tile Jobbers* continued its discussion of book classifications by turning to *United States v. American Railway Express Co.*, 17 CCPA 10, T.D. 43,317 (1929). In that case, the Court of Customs and Patent Appeals distinguished *American Railway* from *Field & Co.* since the merchandise in *American Railway,* (travel brochures issued by the Canadian National Railway) required "mental effort and ability to prepare." *Los Angeles Tile Jobbers,* 63 Cust.Ct. at 403. The travel publications "describ[ed] localities accessible through the use of the railway and g[ave] details concerning such subjects as fishing, hunting, camping, hotels and resorts. Some had many illustrations and contained several hundred pages of reading matter while others were smaller and contained only lists of resorts, time tables and similar information." *Id.* Plaintiff in *American Railway* contended that the merchandise should have been classified as printed matter of bona fide foreign authorship under paragraph 1310 of the Tariff Act of 1922. The Court of Customs and Patent Appeals agreed stating:

> Accepting the definition as thus given of an author, as "one who composes or writes a book, a composer as distinguished from an editor, translator, or compiler," it is evident to the court that the exhibits before us are susceptible of authorship. It would be a work of supererogation for us now to attempt to describe each exhibit individually, and to point out wherein authorship is manifest. It is sufficient to say that the exhibits are full of descriptive historical and geographical matter, and such matter as required mental effort and ability to prepare.

*Id.* (quoting *American Railway,* 17 CCPA at 14).

### The Florence Agreement

The Agreement on the Importation of Educational, Scientific and Cultural Materials (commonly known as the Florence Agreement) was sponsored by the United Nations Educational, Scientific and Cultural Organization (UNESCO) and adopted by the General Counsel of UNESCO at Florence in 1950. Agreement on the Importation of Educational, Scientific and Cultural Materials, *opened for signature* Nov. 22, 1950, 17 U.S.T. 1835, T.I.A.S. No. 6129 (1966). Its major purpose was "to make it easier to import educational, scientific and cultural materials." *A Guide to the Operation of the Agreement on the Importation of Educational, Scientific and Cultural Material,* UNESCO, 1969 at 5 (Plaintiff's Exhibit 6). "The central feature of the Agreement is exemption from customs duties" and the "exemption extended to books is not subject to any qualification as

to their educational, scientific or cultural character." *Id.* at 7, 10.

To implement the Florence Agreement, Congress enacted the Educational, Scientific, and Cultural Materials Importation Act of 1966, Pub.L. 89–651, 80 Stat. 897 (1966), which eliminated TSUS items 270.-15–270.40 from the Tariff Schedules.[1] New item 270.25 was created for "Books not specially provided for" admitted duty-free. 80 Stat. at 897. Congress also modified item 270.45 by deleting the article description pertaining to books not specially provided for *"consisting essentially of textual matter"* and inserted in lieu thereof language relating to printed catalogs. *Id.* (emphasis added). Plaintiff notes that item 270.25 does not include the restriction "consisting essentially of textual matter" and that the Florence Agreement makes no distinction based upon the proportion of text versus pictures.

At trial, Carl Abramowitz, national import specialist in pulp, paper and printed matter, was asked whether the "essentially textual" standard had been used after 1967, in spite of the changes made due to the Florence Agreement. He responded:

I recall that there was a decision in 1979 by the Headquarters' office which read in part that the provision for books not specially provided for in 270.25 covers only such books which consist essentially of textual matter.

That seems to have reinstated the language which the Congress had dropped out. And from that date, for some years, we were looking at books to see if they were essentially textual or not, be-cause we had been instructed to do so, in fact.

Trial Transcript at 66.

Customs issued a March 1986 Memorandum by the Director of the Classification and Value Division to the District Director of Customs, Seattle, Washington, which discussed the application of the Florence Agreement. The merchandise in question was a volume entitled *States of War*, which was a bound compilation of a one-page acknowledgment, a one-page forward, a ten-page unsigned introduction and forty-four lithographs. The memorandum read in pertinent part:

Attached for your information and future guidance are Protest Review Decision, dated May 5, 1983 (072090), and our letter of August 20, 1985 (076794). You will note that the "essentially textual" criteria which had traditionally governed classifications in item 270.25, TSUS, and to which we alluded in our October 18, 1985, memorandum, was effectively repealed by the Florence Agreement, 17 U.S.T. 1835, T.I.A.S. No. 6129 (1966), and no longer represents Customs [sic] position in such matters. The Florence Agreement amendments essentially expanded the scope of the basket provision for books, in item 270.25, TSUS. As indicated in our August 20 decision, "... the Florence Agreement implementation has expanded the provision for books to include articles which are 'less than essentially textual' and which are pictorial." ... Thus, the real issue here is whether, despite the obvious pictorial content in *States of War*, the textual content may be viewed as more than incidental, thus warranting classification as a book. Because of the nature of the

---

1. The following TSUS items were eliminated by Pub.L. 89–651:

270.15 Books printed wholly or chiefly in languages other than English. ................Free
270.20 Books (except books described in item 270.15) which when imported have been printed over 20 years. ......................Free
270.30 Bibles, comprising the books of the Old or New Testament, or both..............Free
270.35 Prayer books not covered by any of the foregoing..2% *ad val.*, provisions of this part.　25% *ad val.*
270.40 Picture books (not including toy books), with an accompanying text printed in any language, suitable for the use of children not over 6 years of 7.5% *ad val.*, age. .................... 15% *ad val.*

TSUS Schedule 2, Part 5 (1965); *see* 80 Stat. at 897.

involved tariff provisions, particularly in view of the expanded scope of the provision for books in item 270.25, TSUS, Customs officers in the future will be required to make this determination on a case-by-case basis.

We have previously held that captions and indexes do not normally control classification.... The 63 page compilation *States of War* depicts 44 lithographs which, standing alone, are difficult to interpret, at best. The unsigned introduction defines the various styles and techniques of many of the artists, and contains pointed interpretations of many of the lithographs, the emotions, social statements, and complexities of life in general each artist is attempting to depict. It is our opinion that the introduction in this instance is more than an incidental feature and that there is sufficient thematic integration of the text to warrant classification under the provision for books, not specially provided for, in item 270.25, TSUS....

Plaintiff's Exhibit 11 at 1–2.

*Classification of Books in 1984*

Plaintiff contends that there is no predictable standard for determining whether merchandise is classified as a book. At trial, plaintiff's manager of copyrights testified that *Landscapes* had been imported at times without any duty being charged at all. National import specialist Carl Abramowitz testified that if the pages of *Landscapes* had come in unbound, they would have been classified as duty-free under TSUS item 960.40 (1984) ("Loose illustrations, production proofs or reproduction films used for the production of books ...").

Abramowitz also testified regarding what standard is used today for deciding whether books are classified under 270.25 or 274.60. The following colloquy transpired:

A. Well, up until December 30th, December 31st [1988], [prior to the Harmonized Code] we would look at a book and ask ourselves whether this is essentially a collection of pictures or if it is something more than that. If it

were essentially a collection of pictures and if it were imprinted by a lithographic process, we would classify it in 274.60.

Q. How do you know if something is essentially a collection of pictures, what factors would you consider?

A. Well, certainly the number of pictures, the relative space occupied on the pages by the pictures.

. . . .

Q. Is there some percentage of the space in a book that will have to be taken up with pictures to be considered essentially pictures?

A. I don't think so at this time. When I say "at this time," I mean up until the end of 1988....

No, recently, at this time there is no percentage number that we use.

Q. Was there a square inch number, was there any objective factor you could look at?

A. Not under present guidelines, no, sir.

. . . .

Q. What other factors, if there were any, would you consider? You have mentioned [the] number of pictures and the space.

A. I would look for the presence or absence of text. If text was present, I would look to see how much of it was there and what its function was in the work.

. . . .

Q. What were those rationales or guidelines that [headquarters] used, or did you subjectively ... determine whether you had a collection of lithographs or a book?

A. One of the guidelines, sir, was the statement that if the text in a book merely describes the pictures, we were to consider the book a collection of pictures. On the other hand, if the pictures illustrate the text, then it was an essentially textual book and should be classified as a book.

. . . .

Q. What do you consider to be the test now as far as if this is a book or is not a book?

A. If the work has an overwhelming preponderance of pictures such as that one can say it is a collection of pictures within covers, I would classify it within 274.60. If the book, on the other hand, had sufficient text which went throughout the book and interweaved with the pictures, particularly if the pictures could somehow be construed as being illustrative of the text, I would classify it as a book in 270.25.

Q. This is ... your subjective point of view?

A. Yes, sir.

Trial Transcript at 59–75.

■ In order to succeed in this action, plaintiff must overcome the statutory presumption of correctness of the government's classification of the merchandise under 28 U.S.C. 2639(a)(1) (1988). *See also Jarvis Clark Co. v. United States,* 2 Fed. Cir. (T) 70, 75, 733 F.2d 873, 878, *reh'g denied,* 2 Fed.Cir. (T) 97, 739 F.2d 628 (1984). The Court holds that plaintiff has overcome this presumption, and that the merchandise in question is a book. Plaintiff has demonstrated that mental effort as described in *American Railway* has gone into the preparation of this publication, and, that as in *States of War,* the introduction is "more than an incidental feature" of this volume. In examining *Landscapes,* the Court notes that the first sixteen pages of text set the tone for the volume since the author outlined the history of the parks service and the exploration of America by pioneers as well as naturalists. The photographs that follow depicted the national parks, and a variety of nature scenes including panoramas of mountains, oceans, rivers, forests, bridges and monuments. Although there are many plates, the sequence of photographs combined with descriptive captions and the introductory text make this publication more than a mere collection of lithographs.

Defendant makes much of the fact that the author of the text did not see the photographs before writing his introduction. The author did testify that he was hired to write approximately 20,000 words "which would illustrate the theme, 'Landscapes of America.'" Trial Transcript at 85. The national import specialist testified that the customs official who classified the merchandise would not consider who the author of the text was. There was no testimony as to whether or not the customs official was interested in the author's role of selecting the plates or describing them. The customs official, according to the import specialist, was looking at whether the text described the pictures or the pictures illustrated the text.

## ALTERNATE CLASSIFICATION

Defendant contends that a possible alternative classification for the merchandise may be TSUS item 274.75 "Printed matter not specially provided for ... Other: Printed on paper in whole or in part by a lithographic process: Not over 0.020 inch thick" at a rate of two cents per pound. Defendant claims that this alternate classification might be appropriate because the merchandise is "printed matter" and was printed "by a lithographic process."

Since the Court has determined that the "printed matter" in question is a book and properly classified under TSUS item 270.25 as "Books not specially provided for" the Court need not address this claim.

## RELATIVE SPECIFICITY

■ General Interpretive Rule 10(c) requires that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it...." Defendant contends that TSUS item 274.60 "Lithographs on paper" is a more specific description of *Landscapes* and that it contains more difficult criteria to meet than item 270.25 "Books not specially provided for."

The Court has determined that *Landscapes* is properly classified as a book and that *Landscapes* is described only under TSUS item 270.25. Therefore, the rule of relative specificity does not apply.

Defendant also points to General Interpretive Rule 10(d) which requires that when merchandise may be classified under two or more provisions, "such article shall be subject to duty under the description for which the original statutory rate is highest...." The Court holds that the merchandise in question may only be classified under TSUS item 270.25 "Books not specially provided for." Since there is no other suitable classification, General Interpretive Rule 10(d) does not apply.

## DECLARATORY JUDGMENT

Plaintiff requests a declaratory judgment which would (1) interpret the TSUS item provisions at issue, (2) declare that these provisions mandate duty-free importation of all books regardless of their pictorial content, and (3) enjoin Customs to apply the tariffs according to the Court's declaration.

It is well established that in customs classification cases, "a determination of fact or law with respect to one importation is not *res judicata* as to another importation of the same merchandise by the same parties." *Schott Optical Glass, Inc. v. United States,* 3 Fed.Cir. (T) 35, 36, 750 F.2d 62, 64 (1984) (citing *United States v. Stone & Downer Co.,* 274 U.S. 225, 47 S.Ct. 616, 71 L.Ed. 1013 (1927)). In *Stone & Downer Co.,* the Supreme Court held that "circumstances justify limiting the finality of the conclusion in customs controversies to the identical importation." 274 U.S. at 235, 47 S.Ct. at 618. The Supreme Court provided a hypothetical which made clear that "[t]he opportunity to relitigate applies to questions of construction of the classifying statute as well as to questions of fact as to the merchandise." *Schott Optical Glass, Inc.,* 3 Fed.Cir. (T) at 36, 750 F.2d at 64 (citing *Stone & Downer Co.,* 274 U.S. at 236, 47 S.Ct. at 619).

This Court, therefore denies plaintiff's application for a declaratory judgment that would interpret the TSUS item provisions at issue in a manner that would mandate duty-free importation of all books regardless of their pictorial content and further denies plaintiff's application for a mandatory injunction.

## CONCLUSION

The Court holds that the merchandise in question is properly classified under TSUS item 270.25 as "Books not specially provided for" at a duty-free rate. Customs is directed to reliquidate the merchandise under item 270.25 at a duty-free rate and refund all excess duties with interest.

