(C. D. 632)

HARVARD UNIVERSITY *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided May 18, 1942)

*Warren F. Farr* for the plaintiff.

*Paul P. Rao,* Assistant Attorney General (*Francis X. O'Donnell,* special attorney), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This action arising at Boston involves an assessment of duty upon library cards. Duty was assessed thereon by the collector at 20 per centum ad valorem under paragraph 1410, Tariff Act of 1930, as amended by the reciprocal trade agreement with the United Kingdom, T. D. 49753, as printed matter of other than bona fide foreign authorship.

The plaintiff claims that the merchandise is entitled to free entry under paragraph 1615 as American goods returned. By way of amendment to the protests it is further claimed that the merchandise is free of duty under the provisions of paragraph 1629, 1630, or 1631, the latter claim not being pressed.

The pertinent provisions of the paragraphs of the Tariff Act of 1930 which are involved in this controversy are as follows:

PAR. 1410. * * * and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; *all other, not specially provided for, 25 per centum ad valorem:* * * * [Italics supplied.]

*Trade agreement—United Kingdom* (T. D. 49753)

1410. * * * All other * * * 20% ad val.

PAR. 1615, as amended by Section 35, Customs Administrative Act of 1938.

(a) Articles, the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means.

* * * * * * *

(h) The allowance of total or partial exemption from duty under any provision of this paragraph shall be subject to such regulations as to proof of identity and compliance with the conditions of this paragraph as the Secretary of the Treasury may prescribe.

PAR. 1629. Hydrographic charts and publications issued for their subscribers or exchanges by scientific or literary associations or academies, and publications of individuals for gratuitous private circulation, not advertising matter, and public documents issued by foreign Governments; * * *

PAR. 1630. Books and pamphlets printed wholly or chiefly in languages other than English; * * *

From the evidence presented at the trial we find the following facts: The cards in question are without lines and measure approximately 3 by 6 inches. As imported, certain Chinese characters are printed

thereon for use as a card-index catalog of the books in the Library of the Harvard Chinese Institute of Harvard University. That library has a collection of over one hundred and sixty thousand Chinese and Japanese books. In the year 1936 the library decided to print and publish in the Chinese language a complete catalog of the collection in two forms, one in the form of bound volumes and the other in the form of a card index. A typewritten set of cards, properly arranged, listing all the books, was prepared. This list was taken to China in 1937 by the librarian of the Chinese-Japanese library for printing. A catalog consisting of 10 bound volumes, each volume covering a different subject, was printed therefrom in China. There were 300 sets printed. A copy of one volume of the catalog was admitted in evidence as an illustrative exhibit, consisting of a list of books, in Chinese, each item setting out the title of the book and the name of the author. Each item listed in the bound catalog was printed on a separate index card, so that the complete card index was identical with the bound volumes of the catalog. The blank library index cards were prepared in the United States according to specifications and shipped to China to be printed, a total of 2,458,000 cards being shipped. The printing of the catalog as well as the card index was performed in China because it was impossible to have them printed in Chinese characters in the United States.

Fifty complete sets of the card-index catalog were printed. These sets were imported for distribution to the leading universities, educational institutions, and libraries in the United States at a nominal charge, the same being less than the cost of the cards and the printing. It is a common practice for libraries to exchange card-index catalogs.

The questions presented in this case are as follows: First, whether blank library index cards manufactured and exported from the United States and returned after having had printed thereon Chinese characters are entitled to free entry under paragraph 1615 as American goods returned without having been advanced in value or improved in condition; Second, whether library index cards distributed by the plaintiff at less than cost to other libraries are entitled to free entry under the provisions of paragraph 1629 as publications issued for their subscribers or exchanges by scientific or literary associations or academies; Third, whether a catalog printed wholly in Chinese in the form of a card index is entitled to free entry under the provisions of paragraph 1630 as a book printed wholly in languages other than English.

The plaintiff contends that the cards are free as American goods returned because they are precisely the same as exported except for the printing thereon of Chinese characters, it being urged that the printing in no way increased the commercial value of the cards, but rather decreased the value thereof, for the reason that such cards

were no longer of commercial importance as cards, being useful only for distribution to other libraries and that such cards were distributed at the cost of the card devoid of printing. The plaintiff further argues that the improvement and increased value provided for in paragraph 1615 pertains to such improvement or increase in value as will enhance the general commercial usefulness of the article imported, and that the greater intrinsic worth of the cards for the particular purpose of the importer was immaterial. It is claimed that inasmuch as tariff acts are written for the purpose of protection of our manufacturers, the cards in question would be excluded from such class of article inasmuch as it was impossible to have the Chinese characters thereon printed in the United States.

The plaintiff contends that paragraph 1629 provides for publications issued for subscribers or exchanges by scientific or literary associations or academies and that the cards herein fall squarely within the term "publication," which embraces any book, writing, chart, engraving, or other work which is offered or communicated to the public, and it is not necessary to have the cards bound together in book form, as any writing communicated to the public is a publication.

It is further contended that the index cards are exempt from duty under paragraph 1630 because the cards are exactly the same and serve the same purpose as in the 10-volume book catalog, and as the bound volumes constitute books printed wholly or chiefly in languages other than English, the card index is also a book within the meaning of the paragraph, citing *in re Hempstead*, 95 Fed. 967, holding that the term "book" does not mean only a bound volume.

The Government contends that the merchandise exported from the United States consisted of blank cards but when returned consisted of a complete library card-index system, bearing information as to the title, subject matter, and authorship of 160,000 volumes, and therefore the imported cards possess a value not possessed by the cards exported and the work performed upon the cards abroad advanced them in value, and also a transition from their former blank state to their present printed form is such an improvement in condition that would exclude them from the provisions of paragraph 1615. The Government also draws the court's attention to the fact that the mandatory regulations of the Secretary of the Treasury attending entry under paragraph 1615 were not complied with, the strict compliance therewith being a condition precedent to the grant of free entry.

The Government further contends that the cards are not within the scope of paragraph 1629 because the printing of a library card-index system in fifty sets does not constitute a publication, because the only function of the index is merely that of a handy reference, revealing the identity and location of certain books in the library,

and the cards do not communicate any particular knowledge in and of themselves, they tell no connected story, and have no relation one to the other, except to form parts of an integrated system of reference. It is further contended that the cards are excluded from the provisions of paragraph 1629 because there is nothing to indicate that these cards were issued for subscribers or exchanges; that the other libraries are not subscribers within the meaning of the term, nor are they exchanges because any exchanges made pertain to the books and not the cards.

The Government further contends that Harvard University is not a scientific or literary association or academy because that phrase in the tariff act has reference to such organizations as National Geographic Society, the American Medical Association, the American Academy of Arts and Letters, and the like, and is not applied to universities and colleges; that the term "publications" as used in the first part of paragraph 1629 has reference to "Hydrographic  *  *  * publications", as the term "Hydrographic" was intended by Congress to modify both "charts" and "publications."

The Government's final contention is that a series of index cards, not related to one another, except as a part of the same index system, and not intended or capable of being bound, is not classifiable as a book, within the common meaning of that term, citing *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031.

From a careful consideration of the evidence, exhibits, and briefs of counsel we are of the opinion that the merchandise is not entitled to free entry as American goods returned, because upon their return the cards were so changed in condition that they became dedicated to the one use of a library index system; and further because of the noncompliance with the regulations of the Secretary of the Treasury which have been held to be a condition precedent to free entry.

We are likewise of the opinion that the merchandise is not classifiable under paragraph 1630, as books and pamphlets printed wholly or chiefly in languages other than English, because it is neither in the form of a book or pamphlet nor in a condition indicating that it is dedicated for use in such form. In the case of *United States* v. *One Obscene Book*, 48 Fed. 2nd, 821, 823, a book was defined as

an assembly or concourse of ideas expressed in words, the subject-matter which is embodied in the book, which is sought to be excluded, and not merely the physical object called a book which can be held in one's hands.

It is clear, therefore, that these unrelated cards, each a separate and independent source of information and reference in itself, not the subject of any authorship, may not be regarded as within the common meaning of a book.

The remaining question for consideration is whether or not the library cards in question may be regarded as "publications issued for

their subscribers or exchanges by scientific or literary associations or academies." In the case of *Roger & Gallet* v. *United States*, 5 Ct. Cust. Appls. 443, T. D. 34973; the term "publications" was held to refer to something that conveyed some information of a general character. Library cards in sets, distributed or exchanged with other libraries, would therefore come within the meaning of a publication, because of the notification to other libraries that certain Chinese and Japanese books were made available by Harvard College in its Library of Harvard Chinese Institute. The Library of the Harvard Chinese Institute of Harvard University, a part of Harvard University, clearly is within the meaning of the tariff terms: "scientific or literary associations or academies," as it constitutes an association formed for the advancement of science or art. Therefore we are of the opinion that the library cards in question are entitled to free entry as publications issued for its subscribers or exchanges by scientific or literary associations or academies, under the provisions of paragraph 1629, as claimed.

Judgment will accordingly be entered directing the collector to reliquidate the entries and make refund accordingly.