(C. D. 325)

Nippon Yusen Kaisha v. United States

United States Customs Court, Second Division

(Decided April 30, 1940)

*Barnes, Richardson & Colburn* (*Howard C. Carter* of counsel) for the plaintiff.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Kincheloe, Judge: The merchandise here in question was returned by the appraiser as printed writing paper in sheets over 110 square

inches in area, and was accordingly assessed for duty under the provision therefor in paragraph 1407 (a) of the Tariff Act of 1930, at the rate of 3 cents a pound and 25 per centum ad valorem. It is claimed to be dutiable at either 15 or 25 per centum ad valorem under the first part of paragraph 1410 of said act, reading as follows:

PAR. 1410. Unbound books of all kinds, bound books of all kinds except those bound wholly or in part in leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for, if of bona fide foreign authorship, 15 per centum ad valorem; all other, not specially provided for, 25 per centum ad valorem.

In the case of *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031, which construed the same provision as above in paragraph 1310 of the Tariff Act of 1922, it was held that only articles susceptible of authorship can be classified under either the first or second part of the above provision. In order, therefore, for the present merchandise to be entitled to classification under the second part of said provision it must appear to consist of printed matter susceptible of authorship.

The merchandise is invoiced as 20,000 copies of "Freight List," and the sample in evidence as exhibit 1 consists of a single sheet of paper ruled vertically into columns with printed headings of the information required to be filled in thereon, such as the number of the bill of lading, the shippers, consignees, marks and numbers, number of packages, kinds of packages, contents, remarks, gross weight, weight, measurements, rate, ocean freight, transshipment charges, and total. Above the columns at the left hand side the name and address of "Nippon Yusen Kaisha, 25 Broadway, New York," appears. To the right, in the center, are printed headings for the name of the steamer, voyage number, destination, name of master, and date of sailing. At the left thereof are eight clauses or conditions under which the merchandise is accepted for shipment, such as "Steamer not responsible for chafage or breakage to insufficiently protected property," etc.

Plaintiff in its brief has cited several authorities in support of its contention that the importation is printed matter susceptible of authorship, some of which are under acts prior to the act of 1922, which are clearly not applicable for the reason that the provision for books, etc., of authorship appeared for the first time in the act of 1922. The other authorities cited are also for the most part inapplicable, as in those cases it was not so much a question as to whether the articles were in fact susceptible of authorship, but whether they were of bona fide foreign authorship or not.

In *United States* v. *American Railway Express Co.* 17 C. C. P. A. 10, T. D. 43317, the court had before it certain paper-bound books

and pamphlets issued by the Canadian National Railways Co., and, in holding them to be susceptible of authorship, used the following language in its syllabus:

The descriptive historical and geographical matter, and other information, with which the books and pamphlets are filled, being such as to require mental effort and ability to prepare, are held to be of such a character as to be susceptible of authorship. *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T. D. 42031.

It seems to us that this interpretation does not lay down any very definite line of demarcation as to what does and what does not constitute authorship, as almost any writing or printing would seem to require some "mental effort and ability to prepare," and it may therefore be difficult in a given case to determine whether the writing or printing rises to the dignity of authorship. In this connection we quote the following definitions from the New Standard Dictionary, 1930 edition:

Authorship, n. 1. The state, quality, or function of an author, especially in the literary sense. 2. Origination or source; as, the authorship of a writing, of an action, a state of affairs, etc.

Author, n. 1. One who begins, forms, or originates; creator; prime mover; first cause; as, God is the author of all finite being. 2. The original writer or composer of a book, treatise, or document, as distinguished from an editor, compiler, or translator; specif., one who makes original composition, especially of books or permanent literature, a profession, or speciality, as, who is the author of the book?

The only parts of the printed matter in the present instance that need be considered by us as having any bearing on the question of authorship are the eight clauses on the freight list (Exhibit 1) setting forth the conditions on which freight will be accepted for shipment by the shippers. While these clauses may have required some mental effort and ability to arrange, they in themselves hardly, we think, can be said to be the result or the exercise of any original thought or expression. In our opinion, they are more in the nature of general or set forms of conditions used in the shipment or transportation of merchandise in commerce.

Regarding the imported merchandise then simply as printed freight lists, we are in full accord that the collector's classification and assessment of duty thereon under the *eo nomine* provision in paragraph 1407 (a) for writing paper, printed, is correct. The claim of the plaintiff is therefore overruled. Judgment will be rendered accordingly.