(C. D. 1803)

LANSEN-NAEVE CORP. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 13, 1956)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.

*George Cochran Doub*, Assistant Attorney General (*Alfred A. Taylor, Jr.*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

RAO, Judge: Certain imported merchandise, described in each of two invoices covered by the entry as "One (1) Manuscript Germanium Literature, consisting of 2411 File Cards. Not printed in lithography. In German language with photostatic copies in English language," was classified by the collector of customs at the port of New York, as manufactures of paper, not specially provided for, and assessed with duty at·the rate of 17½ per centum ad valorem, in accordance with the provisions of paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T. D. 52373, supplemented by Presidential proclamation of April 27, 1950, 85 Treas. Dec. 116, T. D. 52462.

Plaintiff claims, in its protest, that this merchandise is free of duty as manuscripts, not specially provided for, within the provisions of paragraph 1714 of said act.

An illustrative sample of one of the imported filecards is in evidence as plaintiff's exhibit 1. It is approximately 5¾ by 8¼ inches in size. On its face, there are printed the words, "Subject," "Year," "Author," "Publication," "Abstract," "Title," "Subject Analysis," "Gmelin-Institut, Clausthal-Zellerfield, Germany," and "Printed in Germany." An appropriate typewritten notation appears alongside each of the printed headings. On the reverse side of the card, attached by means of a transparent adhesive taping, is a photostat of certain printed material.

Dimitri R. Stein, the ultimate consignee, who testified on behalf of the plaintiff, explained that each of the imported cards contains a brief summary or digest of a different scientific publication on the subject of the metal, germanium. He stated that the cards were produced by the Gmelin Institute of Inorganic Chemistry of West Germany, as a routine procedure in the preparation of a series of volumes, each devoted to a different chemical element, known as the Gmelin Handbook.

It appears that the typewritten material on each card is the work of one or several scientists, who read and digest all scientific publications relating to the chemical element to be treated in each volume. The

names of these individuals are not indicated. When the cards are completed, the material is reviewed, formed into sentences, and incorporated into the text of the volume pertaining to the chemical element of which it speaks.

The matter pasted on the back of the card is a photostat of a digest of the same publication, taken from an American journal called Chemical Abstracts. It is included on the card for convenience, as a cross-reference. Except in cases where the American journal did not review the publication, amounting to about 5 per centum of the total, all the cards have photostats attached, as hereinabove described.

The cards are intended for use as filecards, prior to publication of the printed volumes.

It is the contention of the plaintiff that the face portions of the instant filecards are clearly manuscripts and that they are not excluded from that category, by reason of the presence of photostats of printed material on the reverse sides. The argument is made that the photostats "seem to be so thoroughly incorporated by reference as to become a part of the scientists' works," in much the same fashion as a typewritten brief, prepared for the printer, in which might be inserted printed extracts from judicial opinions or other pertinent data.

Alternatively, it is claimed that the cards and photostats ought to be separately classified, the former as manuscripts, within the provisions of said paragraph 1714, the latter as photographs, which are provided for in paragraph 1410 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, at the rate of 12½ per centum ad valorem.

Counsel for the Government urges that, by reason of the printed matter on the face of the cards, the fact that they are prepared by persons whose names do not appear thereon, and the photostats, the cards are not manuscripts, as provided for in said paragraph 1714. This argument is based upon that portion of the definition of the word "manuscript," cited by this court in the case of *H. Kevorkian* v. *United States*, 5 Cust. Ct. 3, C. D. 360, which reads "an author's copy of his work in handwriting or typewriting, from which the printed copies are made."

The cited case raised the question of whether 11 pages, containing both paintings and writings in Arabic, the latter shown to be continuations of the text of certain manuscripts with which the paintings were imported, were parts of manuscripts. In holding that they were, this court stated:

Webster's New International Dictionary defines "manuscript" as

 1. A composition written with the hand, as an ancient book, document, etc., so written before the adoption of printing, or an unprinted modern book, piece of music, etc.; especially an author's copy of his work in hand-

writing or typewriting, from which the printed copies are made; a writing of any kind as distinguished from a printed copy.

2. a. Writing, as opposed to print; as, the book is in manuscript. b. Handwriting; hand.

*The distinguishing features of a manuscript are that it is written by hand or by typewriting as distinguished from a work produced on the printing press.* There is nothing in the definition which would deprive an article of classification as a manuscript if it contained also a picture made by hand. The description and uses of manuscripts are defined in the Summary of Tariff Information of 1929, page 2437, as follows:

A manuscript is an author's copy of his work in handwriting or typewriting from which the printed copies are made. [Italics supplied.]

In the 1921 Summary of Tariff Information, the word "manuscript" is described as follows:

Modern usage considers any group of pages, whether written by hand or type-written (not mimeographed) a manuscript.

This connotation of the term "manuscript" finds current support in Webster's New International Dictionary, second edition, published in 1951, which supplements its earlier definition quoted in the *Kevorkian* case, *supra*, by the addition of the phrase "a written or typewritten document of any kind as distinguished from a printed copy."

In that sense, the faces of the cards before us are clearly manuscripts. Neither are they rendered less so because of the incidental printed matter, which has no real effect on the essential written material. Facewise, the usefulness of the cards derives solely and exclusively from the words which are placed there by the reviewers of the pertinent scientific publications. In our view, the utility of the writers' contributions would not be greatly diminished, if the same were not introduced by any of the headings printed upon the cards. For these reasons, we are inclined to the belief that were the cards in issue imported, without their photostatic attachments, they would properly be considered to be manuscripts.

But this is not the situation before us. As heretofore noted, most of the cards have attached to their reverse side a photostat of certain printed material, which has a direct bearing upon the use to which the cards are applied. It is an addition to the written data, purposefully included to subserve a real function to anyone seeking information from the cards. As the photostats reproduce printed matter, they are obviously not manuscripts, and may not be considered so because they happen to be parts of what otherwise are manuscripts.

We regard as relevant the case of *W. H. Allison* v. *United States*, 58 Treas. Dec. 1139, Abstract 13974, wherein certain printer's copy, consisting of pages on which were pasted clippings from old city directories, with penciled notations, to be used in the preparation of a

directory, was held not to be a manuscript, by reason of being printed pages.

Since each card, taken as a whole, contains both writing and printing, it is something more than any definition of the word "manuscript" encompasses. Considered as an entirety, it would, therefore, naturally be excluded from the free-list provision for manuscripts, and we so hold.

The argument is made, however, that cards and photostats are separate tariff entities, the one being manuscripts, the other, photographs, falling in paragraph 1410, as modified, *supra*. Whether this argument has substance, it is not for us now to decide, for the contention is raised in the brief, but not in the protest. The protest claims only that merchandise, assessed at 17½ per centum ad valorem, is free of duty by virtue of paragraph 1714. There is no claim for separate tariff treatment of separate tariff entities. Not being raised in the protest, this issue is not before the court for consideration. *American Mail Line, Ltd.* v. *United States*, 34 C. C. P. A. (Customs) 1, C. A. D. 335.

For the foregoing reasons, we hold that the presumption of correctness of the collector's classification of the merchandise at bar, as manufactures of paper, not specially provided for, within paragraph 1413, as modified, *supra*, has not been overcome. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.