(C.D. 2540)

BAUER ALPHABETS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided June 7, 1965)

*Siegel, Mandell & Davidson* (*David Serko, Allan H. Kamnitz,* and *Richard H. Abbey* of counsel) for the plaintiff.
*John W. Douglas,* Assistant Attorney General (*Richard J. Kaplan* and *Arthur H. Steinberg,* trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Judge: Certain printed folders are the subject of the instant five protests which have been consolidated for purposes of trial.

For reasons which have not been explained, the items in issue were not uniformly classified by the collector of customs at the port of entry. Those folders, invoiced as "Futura" in entry 940889 of protest 60/29580 and represented by the article introduced into evidence as plaintiff's exhibit 1; as "Venus" in entry 798829 of protests 59/17114 and 59/17115, in evidence as plaintiff's exhibit 3; and as "Fortuna" in entry 796963 of protest 60/14156, in evidence as plaintiff's exhibit 5, were classified within the provisions of paragraph 1413 of the Tariff Act of 1930, as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, as manufacturers of paper, not specially provided for, and, accordingly, were assessed with duty at the rate of 17½ per centum ad valorem. The items invoiced as "Lucian" and "Bernhard Cursive" in entry 798829 of protests 59/17114 and 59/17115, introduced into

evidence as plaintiff's exhibits 2 and 4, respectively, were classified as articles, wholly or in chief value of surface-coated paper, within the provisions of paragraph 1405 of said act, as modified by the Japanese Protocol to the General Agreement on Tariffs and Trade, 90 Treas. Dec. 234, T.D. 53865, supplemented by Presidential notification, 90 Treas. Dec. 280, T.D. 53877, at the rate of 2½ cents per pound and 10 per centum ad valorem. Those folders invoiced as "Folio" in entry 760486 of protest 61/10732, introduced into evidence as plaintiff's exhibit 6, were assessed with duty at the rate of 10 per centum ad valorem pursuant to the provision in paragraph 1410 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as pamphlets, not specially provided for, of other than *bona fide* foreign authorship.

The sole claim in the protests, as originally filed, was that all of these folders are dutiable at the rate of 5 per centum ad valorem in said paragraph 1410, as modified, *supra*, as pamphlets and/or printed matter, not specially provided for, of *bona fide* foreign authorship. At the trial, however, counsel for the plaintiff stated that it was the intention of plaintiff also to rely upon the failure of Government officials to follow the provisions of section 315(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1953, and of section 16.10(a) of the Customs Regulations in issuing notice of change of practice.

The respective provisions which are here involved, insofar as pertinent, read as follows:

Paragraph 1413 of the Tariff Act of 1930, as modified, *supra*—

Manufactures of paper, or of which paper is the component material of chief value, not specially provided for (except ribbon fly catchers or fly ribbons) _____ 17½% ad val.

Paragraph 1405 of said act, as modified, *supra*—

Bags and other articles (not including printed matter), not specially provided for, which are dutiable under paragraph 1405, Tariff Act of 1930, by reason of being composed wholly or in chief value of any paper specified in that paragraph.    2½¢ per lb. and 10% ad val.

Paragraph 1410 of said act, as modified, *supra*—

Unbound books of all kinds, bound books of all kinds except those bound wholly or in part leather, sheets or printed pages of books bound wholly or in part in leather, pamphlets, music in books or sheets, and printed matter, all the foregoing not specially provided for:
    If of other than bona fide foreign authorship:

\*      \*      \*      \*      \*      \*      \*

    Other books (except diaries), sheets or printed pages of books bound wholly or in part in leather, pamphlets, and music in books or sheets _____ 10% ad val.

\*      \*      \*      \*      \*      \*      \*

Section 315 (d) of said act, as modified, *supra*—

No administrative ruling resulting in the imposition of a higher rate of duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

Section 16.10 (a) of the Customs Regulations reads as follows:

16.10   Change in classification or value; higher or lower rate; effective date.— (a)   If there is an established and uniform practice at the various ports, a change in classification resulting in a higher rate of duty, except as the result of a court decision, shall be made only upon the Bureau's instructions and shall be applicable only to merchandise entered for consumption after the expiration of 90 days after the date of the publication of the Bureau's instructions in the Treasury Decisions.   In the case of merchandise entered for warehouse, such change shall apply to goods withdrawn for consumption after the expiration of such 90-day period, provided the warehouse entry is unliquidated or can be reliquidated within 60 days after the date of liquidation.

In addition to samples of the imported merchandise, which were introduced into evidence as plaintiff's exhibits 1 through 6, as hereinabove indicated, the record consists of the testimony of two witnesses on behalf of the plaintiff.   The first of these was Mrs. Valerie Harand, secretary-treasurer of the plaintiff and an employee of that company and its predecessor, the Bauer Type Foundry, since 1929.   Basically, she is the office manager of this concern, which is engaged in the importation of foundry type faces.   After identifying the representative samples of the imported merchandise, this witness testified that the principal purpose of material such as this is to display the style and size of the foundry type merchandised by plaintiff.

Mrs. Harand had been to the factory in Germany where the subject folders were prepared.   She described the steps in their production in the following testimony:

* * * the art department, under the supervision of the art director, Conrad Bauer, would make a tentative layout and determine whether one or two pages can be used to show the complete size range and then depending upon the allotted space, the artist has to select some suitable text matter.   It has to be interesting, informative, and after it is set in type, it has to be visually attractive.   By that I mean that if the characters in one word, for instance, don't look well from a typographical point of view, this is what has to be changed and substituted with another word without changing the sense of the sentence.   If that cannot be done, an entirely new text matter has to be searched.   By that I mean to say that the artist in charge of this printed matter has to be very selective. He has to keep an eye as far as an attractive layout is concerned and he must have knowledge of typography.   Only in this way can a book like that be produced.

This witness further testified that she had personally met Mr. Bauer and knew him to be a German national.

She also stated that the imported folders are distributed to advertising agencies, art directors, typographers, and, to a large extent, educational institutions, to demonstrate the style and size of type and to facilitate the teaching of advertising layouts.

According to Mrs. Harand, from 1949, when materials such as those in issue were first imported by her company, through 1955, all of this merchandise was assessed with duty at the rate of 5 per centum ad valorem. In 1956, the company was advised by its customhouse broker that "the duty was increased because of revaluation of our material." She stated that all the importations during the years when duty was assessed at the rate of 5 per centum were made through the port of New York, some 33 entries being involved, and since the plaintiff was the sole representative of the German factory, she did not know of anybody else who would import merchandise the same as plaintiff's exhibits 1 through 6.

On cross-examination, this witness testified that while she did not know who personally wrote the material which is contained in the exhibits, she knew that the art director, Mr. Bauer, was responsible for all of the material. Some, she believed, he selected from the very extensive library which the German factory maintained. Other material was probably original matter. When questioned concerning certain excerpts from the various exhibits, Mrs. Harand stated that where the type illustrated was relatively small, such as 6- or 8-point type, the textual matter was more or less sensible, but as the type increased in size, it was not feasible for the exhibit to contain a meaningful sentence. However, she did acknowledge that the exhibits contained some illustrations of smaller type which, while purporting to convey an idea, did not actually complete the thought, and that, in the last analysis, the material was prepared to show the various styles of type to best advantage. It was, nevertheless, the opinion of this witness that folders of the type here involved were intended to present intelligible printed matter.

Plaintiff's second witness, Mr. Martin Walsh, is a salesman who has been associated with Bauer Alphabets, Inc., for approximately 12 years. He had also taken some courses in typography and art in various night schools. He stated that he was familiar with the exhibits in issue which he sold practically daily to advertising agencies, art directors, etc., to demonstrate the various type styles, their spacing potentials, and the possible designs for which they are useful. He considered these articles to be meaningful in that they provide information to the advertising director as to spacing, the formation of let-

ters, the depth, and the final appearance of an advertising layout. Seemingly, however, his testimony reduces to the observation that the words which appear in the various exhibits were not actually intended to convey any message to his customers, as is evident by his responses to the following questions asked by Judge Lawrence:

JUDGE LAWRENCE: In the final analysis, aren't the contents of these exhibits designed to illustrate to the printer or the artist the style and type of printing rather than to convey any message by language?

THE WITNESSS: Yes, it conveys the type face and the designs.

JUDGE LAWRENCE: The language used is not intended to convey any message by words, is it?

THE WITNESS: No, not necessarily.

JUDGE LAWRENCE: Except by illustration.

THE WITNESS: Except by illustration.

The foregoing resumé of the evidence serves in part to provide a description of the material contained in the samples of the importations which are in evidence. While the six exhibits differ in form and in general appearance, as well as in their contents, they are all designed to demonstrate the style of type for which they are named. Each of the pages contains, in progression, excerpts of printing in different size types, as well as letters of the alphabet, numerical figures, and punctuation marks. Selected at random are the following from each of the exhibits:

Plaintiff's exhibit 1—

12 Point 22A 43a

In radio lies the possibility of a national culture. Rich, powerful and dominating, it is a stupendous instrument, serving the hopes and needs, the dim, unperceived aspirations, of a hundred million people.

AUTOMOTIVE BUSINESS MAGAZINE

Plaintiff's exhibit 2—

18 point 12A 26a
Humorous Incidents in the Comedies of Sheridan
UNION EXPRESS DE LUXE

Plaintiff's exhibit 3—

6 Point 30A 60a

The Whitney Museum of American Art has recently completed the presentation of its permanent collection to public view, so that an opportunity has been

AFFORDED TO REALIZE THE EXTENT OF ITS ACQUISITIONS AS WELL AS THE CHARACTER OF AMERICAN ART DURING THE PERIOD OF THE TWENTY-FIVE YE

Plaintiff's exhibit 4, illustrating Bernhard Cursive script type, contains some 18 examples in various sizes, some unfinished sentences, some titles, and a representation of characters in complete fonts.

Plaintiff's exhibit 5—

8 point 22A 44a

He would fain set it down for ever; engrave it on rock, if he could; saying "This is the best of me; for the rest, I ate, and drank, and slept, loved, and hated, like another; my life was as the vapour, and is not; but this I saw and knew: this, if anything of mine, is worth your memory". That is his writing; it is, in his small

HUMAN WAY, AND WITH WHATEVER DEGREE .

Plaintiff's exhibit 6—

8 point 26A 52a

A book is written, not to multiply the voice merely, not to carry it merely, but to preserve it. The author has something to say which he perceives to be true and useful, or helpfully beautiful. So far as he knows, no one has yet said it; so far as he knows, no one else can say it. He is bound to say it, clearly and melodiously if he may; clearly, at all events. In the sum of his life he finds this to be the thing, or group of things, manifest to him; this the piece of true knowledge, or sight,

WHICH HIS SHARE OF SUNSHINE AND EARTH HAS PERMITTED HIM TO SEIZE. HE

We have set forth excerpts from the printing on the instant merchandise in some detail for the reason that more vividly than by description it reveals the actual nature of these importations, and because in the determination of whether the subject folders fall within the scope of the claimed provision of paragraph 1410, as modified, *supra*, the character of the printing is a major consideration.

It is by now settled law that the portion of paragraph 1410 here in issue relates only to such material as is susceptible of authorship and is not intended to include mechanical productions which merely happen to have the form or appearance of a book, a pamphlet, or other printed matter. The principle involved was first enunciated in the case of *United States* v. *Field & Co.*, 14 Ct. Cust. Appls. 376, T.D. 42031, in connection with an importation of samples of handkerchiefs, cut in half and bound together in book form, which samples were identified by printed labels. The rule has been followed in *United States* v. *A. H. Ringk & Co.*, 16 Ct. Cust. Appls. 323, T.D. 43077, with respect to telephone notebooks; in *Barry & Staines Linoleum, Inc.* v. *United States*, 24 CCPA 383, T.D. 48831, for printed designs of linoleum; in *Nippon Yusen Kaisha* v. *United States*, 4 Cust. Ct. 218, C.D. 325, for printed freight lists; and in *Baker, Irons & Dockstader et al.* v. *United States*, 38 Cust. Ct. 435, Abstract 60571, for so-called market reminders. In each of the cited cases, the merchandise in issue contained some printed matter which the courts found to be not of such character

as to be the product of authorship in any real sense and, hence, not entitled to classification as printed matter within this provision.

The concept of authorship which has developed from the rationale of the foregoing is one which contemplates some product of original expression which is the result of mental application and which tends to provide a coherent, sensible text. There must be something in the context which demonstrates creativity and which produces a meaningful, understandable thought, idea, or plan.

The word "authorship," when held to apply to printings of various kinds, has been construed as embracing expressions of intellectual skills and attainments, whether they be in the form of mathematical tabulations (*Baker, Lyman & Co., Inc.* v. *United States*, 24 Cust. Ct. 113, C.D. 1218); statistical information (*Kelly Publishing Co.* v. *United States*, 56 Treas. Dec. 108, T.D. 43493); illustrative anatomical charts systematically arranged (*Carson M. Simon & Co.* v. *United States*, 31 Cust. Ct. 53, C.D. 1544); or descriptive historical or geographical matter designed to serve as advertising material (*United States* v. *American Railway Express Co.* et al., 17 CCPA 10, T.D. 43317).

Obviously, the material at bar contains printing which required some mental effort to collate and to reproduce in the form in which it is imported. But, by the same token, it contains no meaningful or sensible textual matter. Seemingly, the folders were not put together to impart substantive significance to the written word or, indeed, even to the composite text as text *per se*. Words and phrases, and even entire sentences, are combined in various sizes of type to demonstrate not the thought contained in the text, but the appearance of the words in the size and in the form of the foundry type which has been used. This, we believe, tends more to the mechanical than to the creative. It neither conveys nor was intended to convey any intelligible concepts deriving from the context of the printing.

It is the opinion of the court that the material at bar is as much a mechanical production as any other assembly of physical products in book form. The mere circumstance that the merchandise is susceptible of reproduction in the form of printed words rather than in the form of printed designs does not make these articles the product of authorship within the contemplation of the provision here in issue.

Moreover, we consider the record inadequate to show either that the so-called art director at the German factory was a *bona fide* national or that he was personally responsible for the production of the imported folders in the form and style in which they were printed. There is no evidence to indicate Mrs. Harand's qualifications to testify concerning the citizenship or even the nationality of the art director,

or to discuss and characterize the degree of mental effort and skill involved in the selection and use of the text prepared for the instant folders.

While it is true that plaintiff asserts that classification of the merchandise at bar within paragraph 1410 is dictated by the failure of customs officials to comply with the provisions of section 315 (d) of the Tariff Act of 1930, as amended, *supra*, and of section 16.10 (a) of the Customs Regulations in issuing notice of a change of practice, it does not appear that this was a ground upon which reliance was placed at the time that the instant protests were filed. By virtue of the provisions of section 514 of the Tariff Act of 1930, a protest must set forth distinctly and specifically the reasons for the objection to the action of the collector, to the end that he may reconsider his decision and modify the same if he believes that the ground for the objection has merit. The protest is designed to call to the attention of the collector the reason for the objection to his action. Consequently, issues which are not embraced by the protest are not properly before the court for consideration, unless they are within the scope of the original claim presented and added thereto by way of amendment. *American Mail Line, Ltd.* v. *United States*, 34 CCPA 1, C.A.D. 335; *Lansen-Naeve Corp.* v. *United States*, 37 Cust. Ct. 91, C.D. 1803.

Moreover, without further analyzing the proof on this phase of the case or setting forth plaintiff's arguments thereon, our consideration thereof does not convince us that there was such an established and uniform practice with respect to the classification of printed folders of the type here involved as would require compliance with the change of practice provisions of the tariff act and of the regulations.

Our observations concerning the absence of authorship involved in the production of the merchandise at bar tends to conflict with the classification of the so-called "Folio" type (plaintiff's exhibit 6) of protest 61/10732 as printed matter, not specially provided for, within the provisions of paragraph 1410, as modified, *supra*. Whether or not plaintiff's exhibit 6 actually is representative of the merchandise so designated on the invoice covering this material seems to have been questioned at the trial, although by reason of the testimony of the witness Harand, it was received in evidence as a representative sample. In any event, since we do not regard this material as susceptible of authorship, the claim with respect to this class of merchandise is overruled, without affirming the collector's classification. In all other respects, in view of the considerations hereinabove expressed, all other claims are overruled.

Judgement will be entered accordingly.